IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JAMES KODY-LEE LOPEZ**, <br><br>　　　　Defendant. | Case No. 3:14-cv-353-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney, and Seth D. Uram, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland OR, 97204. Of Attorneys for United States of America.

Francesca Freccero, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

　　James Kody-Lee Lopez brings this motion, seeking an order lifting the bar on his employment as a union organizer under 29 U.S.C. § 504. Because Mr. Lopez has been convicted of a qualifying offense (in this case, a violation of federal narcotics laws), he is prohibited under the Labor Management Reporting and Disclosure Act ("LMRDA") from serving in certain leadership positions within a union for a period of thirteen years after the end of his term of imprisonment. Mr. Lopez seeks an exemption from this statutory thirteen-year bar in order to

PAGE 1 – OPINION AND ORDER

pursue a position as a union organizer for the Pacific Northwest Regional Council of Carpenters ("PNRCC"), an affiliate of the United Brotherhood of Carpenters ("UBC"). The United States opposes Mr. Lopez's motion, arguing that he has not clearly demonstrated that he has been fully rehabilitated and that his union position would be contrary to the purposes of the LMRDA. Mr. Lopez's U.S. Probation Officer, however, reports that Mr. Lopez "has matured over the past few years and appears to have left criminality behind." For the reasons that follow, the Court GRANTS the pending motion.

## BACKGROUND

In March of 2009, special agents from the Drug Enforcement Administration observed Mr. Lopez attempting to sell ten thousand pills that he claimed contained oxycodone to a confidential informant. Mr. Lopez was arrested, and the pills tested positive for heroin. Shortly thereafter, the U.S. Attorney's Office for the Western District of Washington filed a criminal complaint charging Mr. Lopez with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Mr. Lopez was indicted on the same charge on May 14, 2009, and pled guilty one week later.[1]

The United States District Court for the Western District of Washington sentenced Mr. Lopez to 60 months' imprisonment followed by four years of supervised release. Mr. Lopez finished serving his term of imprisonment and began his term of supervised release on August 1,

---

[1] In addition, in 2007 Mr. Lopez was arrested for cocaine possession, but he successfully completed the Multnomah County diversionary program and the charge against him was dismissed in 2009. Under Oregon law, conditional discharges do not constitute "convictions." *See* Or. Rev. Stat. 475.245(3). *Contra Beardsley v. U.S. Dep't of Labor*, 807 F. Supp. 1192, 1193 (W.D. Pa. 1992) (holding that guilty plea followed by probation without verdict was a disqualifying conviction under 29 U.S.C. § 504(a) under Pennsylvania law because the petitioner had not yet completed probation and the conviction had not yet been dismissed). Accordingly, Mr. Lopez's only conviction that imposes a bar under 29 U.S.C. § 504 is his federal conviction under 21 U.S.C. § 841.

2014. His case was transferred to Oregon for the remainder of his supervised release. Because Mr. Lopez was convicted of a narcotics offense, 29 U.S.C. § 504(a) disqualifies him from serving as an officer, advisor, consultant, or similar position in a labor-related organization for thirteen years after the end of his imprisonment. The statutory disqualification expires on August 1, 2027.

In February of 2015, six months after he began his supervised release, Beaverton Police arrested Mr. Lopez for participating in a bar fight. He was convicted of fourth-degree assault in Washington County Circuit Court and sentenced to ten days in jail and 36 months of probation. The United States District Court for the District of Oregon held a hearing and determined that Mr. Lopez had violated the conditions of his supervised release by using alcohol and committing fourth-degree assault. The Court continued Mr. Lopez's supervised release but imposed several additional conditions, including alcohol monitoring and testing, anger-management counseling, and participation in a residential reentry center.

During his period of incarceration and supervised release, Mr. Lopez took advantage of various educational and job-training programs. While incarcerated, Mr. Lopez participated in several vocational training programs in horticulture, plumbing, welding, and heating and air conditioning. Upon his release from prison, he began an apprenticeship program with the UBC. The apprenticeship normally requires four years to complete, but Mr. Lopez successfully finished it in three years. He later rose to work as a journeyman and as a foreman. In May of 2017, Mr. Lopez was elected by his peers in Local 1503 as a delegate for the PNRCC and as trustee for Local 1503. Union leadership then encouraged him to apply for a position as a union organizer for the PNRCC, which he did. It was only during the background check for the union organizer position that the PNRCC realized that Mr. Lopez's prior criminal conviction prevented

him from serving in a leadership role in his union. He subsequently resigned from his two elected posts. He now brings this motion requesting an exemption from the statutory prohibition on a holding union leadership position under 29 U.S.C. § 504(a), seeking to pursue a position as a union organizer for the PNRCC. Mr. Lopez is 35 years old, has been clean and sober since February 2015, and no longer associates with the drug traffickers with whom he associated in 2009.

## DISCUSSION

Section 504(a) of the LMRDA prohibits persons convicted of certain specified crimes from holding a position of authority in a labor union for a period of thirteen years after the conviction of the crime or after the end of imprisonment, whichever is later. 29 U.S.C. § 504(a). The purpose of this thirteen-year bar is to "secure high standards of responsibility and ethical conduct in labor organizations by locking out . . . those people who demonstrate an inability to abide by such standards." *United States v. Cullison*, 422 F. Supp. 2d 65, 68 (D.D.C. 2006). This statutory provision is not inflexible, and the statute recognizes that there are "rare occasions where a [thirteen] year ban might be considered too harsh." *United States v. Peters*, 938 F. Supp. 2d 296, 298 (N.D.N.Y 2013) (citation omitted). Thus, a person otherwise barred who wishes to enter union leadership may seek relief in three alternative ways. First, the person may petition the sentencing court to reduce the duration of the disability. *Id*. Second, the person may obtain a full restoration of his citizenship rights. *Id.* And third, the person may "petition the sentencing court for an exemption based on the court's determination that petitioner's service in a prohibited capacity does not violate the purpose of the LMRDA." *Id*; *see also* 29 U.S.C. § 504(a) ("if the offense is a Federal offense, the sentencing judge . . . determines that such person's service in

any capacity referred to in clauses (1) through (5) would not be contrary to the purposes of this chapter").[2]

Mr. Lopez seeks the third avenue of relief by asking this Court for an exemption from the thirteen-year bar. He argues that his service as a union organizer would not violate the purpose of the LMRDA because he is fully rehabilitated, more than four years have passed since his incarceration has ended, and his crime of conviction was unrelated to any union activities. The United States opposes Mr. Lopez's motion on the merits. The United States argues that Mr. Lopez has failed to demonstrate that he has been rehabilitated or is sufficiently trustworthy to hold a leadership position that would, among other things, involve managing union assets.

**A. Standards**

The LMRDA itself does not provide a standard or a framework for courts to assess when a defendant has been sufficiently rehabilitated that his union leadership would not violate the purpose of the Act. The United States Sentencing Guidelines ("Guidelines"), however, discusses "Relief from Disability Pertaining to Convicted Persons Prohibited from Holding Certain Position," under 29 U.S.C. §§ 504 and 1111. The Guidelines state, in relevant part:

> In such cases, relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S. SENTENCING GUIDELINES MANUAL § 5J1.1 (2018).

---

[2] Although this case was transferred from the Western District of Washington when Mr. Lopez began his term of supervised release, all parties to the pending motion agree that this Court stands in the shoes of the sentencing court and sentencing judge and has the legal authority to grant the relief requested, if warranted.

In addition, federal courts consider three primary factors in assessing whether allowing a defendant to hold a leadership position in a union would violate the purpose of the LMRDA. First, courts look to the nature of the conviction and whether it has a nexus to union activities. *See United States v. Lipsky*, 221 F. Supp. 3d 480, 484 (S.D.N.Y. 2016); *Peters*, 938 F. Supp. 2d at 301; *United States v. Martin*, 2009 WL 928631, at *4 (D. Minn. Apr. 1, 2009); *Cullison*, 422 F. Supp. 2d at 69, 72. Second, courts consider the amount of time that has passed since the conviction and since the defendant's imprisonment ended.[3] *Cullison*, 422 F. Supp. 2d at 69. Third, and most importantly, courts evaluate whether the defendant has been rehabilitated. *See Lipsky*, 221 F. Supp. 3d at 483; *Peters*, 938 F. Supp. 2d at 299; *Cullison*, 422 F. Supp. 2d at 72.

**B. Nexus Between Crime and Union Activities**

Mr. Lopez's crime has no nexus to his union activities. He committed his crime and had already completed his sentence well before he became involved in the UBC and the PNRCC. There is no requirement, however, that a defendant's crime be connected to union activities in order to trigger the statutory bar. Indeed, some of the crimes enumerated in § 504(a), such as murder and assault, may be completely unrelated to union employment, while other crimes, such as felonies involving abuse or misuse of one's position in a labor organization to obtain illegal gain at the expense of union members, are directly tied to holding a position as a union official. When a defendant's crime directly relates to abusing a position of trust in a union, there is necessarily a question of "whether he will take advantage of a position of authority" again. *Peters*, 938 F. Supp. 2d at 301; *see Cullison*, 422 F. Supp. 2d at 72 (noting that petitioner's crime, illegally extorting and unsealing ballots in union election, was "precisely the type of

---

[3] Courts have noted that the way § 504 is structured penalizes a criminal defendant who cooperates with the government because the person's sentencing is often delayed during the period of cooperation, which in turn delays the ultimate release from imprisonment. *See Cullison*, 422 F. Supp. 2d at 68 n.6.
PAGE 6 – OPINION AND ORDER

illegal and unethical conduct Congress intended to root out of labor organizations by enacting the [LMRDA]"); *Lipsky*, 221 F. Supp. 3d at 484 (describing Department of Labor's opposition to Lipsky's motion as "the argument that Lipsky, having committed bribery once in service of his clients' aims, might again use bribery to gain support for the initiative").

Mr. Lopez was convicted of a drug-trafficking offense, and his crime bears no relation to his present-day union involvement. When, as here, a defendant's crime has no connection to the union, there is no historical basis to believe that the defendant would abuse a position of trust in the union.

### C. Time Since Conviction and Sentence

Mr. Lopez was convicted of his crime nearly ten years ago, and he finished his term of imprisonment four and a half years ago. Neither § 504(a) nor the applicable Guidelines policy statement imposes a minimum time that must elapse before a person can obtain an exemption from the statutory bar. Although Mr. Lopez still has eight and a half years left until the statutory bar automatically lifts, he has already surpassed the three-year minimum in the statute for those who seek a reduction in their employment bar, rather than an exemption. "Letting more time pass to become more confident of" a person's rehabilitation is therefore not required and would serve only to extend the amount of time that person is prevented from being a leader in his new union community. *Lipsky*, 221 F. Supp. 3d at 483.

### D. Rehabilitation

The most important factor, and indeed the only one expressly listed in the Guidelines policy statement, is a defendant's rehabilitation. The Court is satisfied with Mr. Lopez's showing of rehabilitation.

Mr. Lopez has sought to improve his life and the lives of others in his community. He has remained sober since February 2015 and lives in a cooperative group house for individuals

PAGE 7 – OPINION AND ORDER

recovering from addiction. He sponsors and mentors other individuals in their own recovery from addiction. He has pursued higher education and successfully obtained an associate of science degree from Mt. Hood Community College. Mr. Lopez also is working towards obtaining his bachelor's degree at Portland State University.

The U.S. Department of Labor interviewed many of Mr. Lopez's current coworkers and associates in the course of its investigation into Mr. Lopez's rehabilitation. Evelyn Shapiro, President of the PNRCC, expressed support for Mr. Lopez as a union organizer and said that she has witnessed Mr. Lopez's dedication to the UBC and believes that he is taking responsibility for his previous mistakes. In her letter to the Court, Ms. Shapiro also highlighted Mr. Lopez's involvement with several of PNRCC's charitable and community service organizations. Troy Rosetti, a member of the UBC Local 196, described Mr. Lopez as hardworking and having a positive work ethic. Although Mr. Rosetti did not previously know of Mr. Lopez's convictions, after learning of Mr. Lopez's criminal history, Mr. Rosetti stated that he would still recommend Mr. Lopez for a position as a union organizer because Mr. Lopez had exhibited a singular focus on reforming his life and making amends for his past criminal indiscretions.

John Desmond, another UBC member, described Mr. Lopez as an "enthusiastic go-getter" and even after learning of Mr. Lopez's convictions, stated that he still believes Mr. Lopez is trustworthy and honest. Joseph Baron, a leader in UBC, described Mr. Lopez as involved with and passionate about his work and the union. After being told of Mr. Lopez's convictions, Mr. Baron stated that he had never witnessed Mr. Lopez doing anything illegal. Timothy Peterson, another UBC member, "with full knowledge of the totality of Lopez's criminal history *e.g.* convictions, incarcerations, and violation of parole . . . stated that he would recommend

Lopez for a UBC officer position because Lopez has exhibited a singular focus on reforming his life and making amends for his past criminal indiscretions."

Ben Basom, the director of organizing and communications for the PNRCC, wrote twice to the Court to emphasize his support of Mr. Lopez. After Mr. Bosom wrote his first letter to the Court, he reviewed the Department of Labor investigator's notes from his interview. The interview notes stated that Mr. Bosom would not recommend Mr. Lopez as an organizer or other UBC position. In response to these interview notes, Mr. Bosom wrote the Court a second time to clarify his position regarding Mr. Lopez. Mr. Basom wrote that it was his "hope that [the Court] will lift the bar on Mr. Lopez because I believe he can make a valuable contribution to the [PNRCC]." *Id. Mr.* Basom wrote that he believes Mr. Lopez "has a great deal to offer the [PNRCC] and that he has rehabilitated himself. " Mr. Basom emphasized that "[f]or the time [he has] known Mr. Lopez, he has always shown himself to be a person of integrity and honor, who aims to do the right thing and remain a positive influence on our Union."

Further, Mr. Lopez recently applied to join the Masonic Grand Lodge of Oregon and has met several times with Steven Marcarelli, who works at the Multnomah County Sheriff's Office and is also a freemason with the Masonic Grand Lodge. Mr. Marcarelli stated that Mr. Lopez seems genuine in his efforts to better himself, and Mr. Marcarelli described Mr. Lopez as charitable, caring, and faith-filled. Aage Herdman is one of Mr. Lopez's roommates at Oxford House, a clean and sober house in Northeast Portland. Residents of Oxford House manage the affairs of the house and elect a president and treasurer. In addition, all house members are subject to routine urinalysis testing. Mr. Herdman has lived across the hall from Mr. Lopez for the past four years and states that he trusts Mr. Lopez and believes Mr. Lopez deserves another chance.

Finally, as previously mentioned, Mr. Lopez's U.S. Probation Officer, Mr. Dan Painter, wrote to the Court stating:

> I supervised James for several years and he was highly successful. James dedicated himself to his work, and became even more enthusiastic as his involvement grew in the union side of his industry. James had no positive UAs [urinalysis tests] and was easy to contact and locate. While I am hesitant to offer an opinion about how well any individual will fare in the future, I can say that I believe James has matured over the past few years and appears to have left criminality behind.

The multitude of positive character references paint a picture of a man who has changed for the better. Mr. Lopez struggled in the early months following his release from incarceration, and he violated his conditions of supervised release once in February 2015 when he consumed alcohol and committed fourth-degree assault. After then, however, Mr. Lopez has remained sober, and his negative behavior appears to be behind him. The United States argues that Mr. Lopez has not demonstrated that he can be trusted as a union organizer. The government states that, although Mr. Lopez has made some progress towards rehabilitation, a longer period of demonstrated rehabilitation is necessary to show that he is trustworthy. Mr. Lopez's supervised release ended in August 2018, and the United States asserts that Mr. Lopez has not yet had a long enough period of showing that he can be a law-abiding citizen of his own volition, when not required by the court.

Based on all the evidence presented, including Mr. Lopez's own testimony, the Court finds that Mr. Lopez has found a vocation, obtained an education, maintained sobriety, and become a productive and law-abiding member of the community. *See Peters*, 938 F. Supp. 2d at 300 (finding "in the aggregate" petitioner's sobriety, community service, and changes in his personal life demonstrated petitioner had been rehabilitated); *cf. Lipsky*, 221 F. Supp. 3d at 483 (finding petitioner rehabilitated based on his "spotless post-release record" and commitment to

helping others). Mr. Lopez has sufficiently demonstrated to the Court that he is rehabilitated and can be trusted not to endanger the union if allowed to serve in a leadership role. Allowing Mr. Lopez to serve in a leadership position in his union, therefore, would not be contrary to the purposes of the LMRDA. Mr. Lopez's union supports his involvement in union leadership, and his own peers elected him to two leadership positions already, from which he had to resign upon learning of the statutory bar. The PNRCC strongly supports Mr. Lopez's motion to lift the bar on his employment so that he can continue to serve in union leadership roles.

## CONCLUSION

Mr. Lopez's Motion to Lift the Bar to Employment as Union Organizer under 29 U.S.C. § 504 (ECF 13) is GRANTED.

**IT IS SO ORDERED**.

DATED this 29th day of January, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge